U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2021 AUG 26  PM 12: 24

CLERK

BY _____ *Ltw*

DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. |
| | ) | 5:21·cr·76-1 |
| v. | ) | (18 U.S.C. § 2313) |
| | ) | |
| MICHAEL A. GONZALEZ | ) | |

## INDICTMENT

The Grand Jury charges:

### Background

At all times relevant to this Indictment:

1. Tesla, Inc. ("Tesla") is and was an American electric vehicle and clean energy company based in Palo Alto, California. Tesla was one of the world's best-selling plug-in and battery electric passenger car manufacturers.

2. Each Tesla vehicle manufactured was assigned a vehicle identification number ("VIN").  A VIN was a unique code used by the automotive industry to identify individual motor vehicles. Under Title 49, Code of Federal Regulations, Sections 565.12 and 13, a VIN must be 17 characters and consist of "a series of Arabic numbers and Roman letters … assigned to a motor vehicle for identification purposes."

3. A customer who wanted to purchase a Tesla vehicle had the option to reserve a vehicle online or reserve a vehicle in a Tesla store. In reserving a Tesla vehicle, a customer chose his or her desired Tesla model, color, and options.

4. To complete the order, the customer paid a $2,500 down payment, typically with credit or debit card. When the vehicle was ready, the customer either collected the vehicle from a Tesla store or Tesla had the vehicle delivered to the customer.

5. Prior to receiving the vehicle, the customer had to pay Tesla the outstanding balance with one of a variety of payment methods. For example, the customer could pay for the vehicle via a wire transfer, loan financing, or an automated clearing house ("ACH") transfer. To pay by ACH transfer, the customer entered their bank account information into Tesla's online payment platform and authorized the transfer of the outstanding balance from the customer's account to Tesla.

6. When a customer paid for a vehicle directly and in full, Tesla provided the customer a Manufacturer's Certificate of Origin to serve as the customer's proof of ownership and to allow the customer to register, title, or re-sell the vehicle.

## Count 1

### (*Tesla VIN 8393*)

7. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 6 of this Indictment as if fully set forth here.

8. On or about September 12, 2018, GONZALEZ reserved a 2018 Tesla Model 3, ultimately agreeing to buy the Tesla vehicle assigned VIN 5YJ3E1EA3JF078393 ("Tesla 8393") for approximately $58,200.

9. In connection with the order, GONZALEZ provided Tesla with addresses in Burlington and Underhill, Vermont and with a copy of his Vermont driver's license.

10. On or about September 12, 2018, GONZALEZ paid $2,500 as a down payment for Tesla 8393 from his TD Bank account ending in 7330. After paying the down payment, GONZALEZ owed Tesla approximately $55,700 for Tesla 8393.

11. To pay the remaining balance on Tesla 8393, in late October and early November 2018, GONZALEZ initiated ACH transfers of $55,700 to Tesla from his TD Bank account ending in 7330. At the time of the transfer, GONZALEZ knew that the account had insufficient funds to pay for Tesla 8393.

12. On or about October 30, 2018, Tesla (using a third-party carrier) caused Tesla 8393 to be delivered from Kenilworth, New Jersey to GONZALEZ in Burlington, Vermont. Tesla issued GONZALEZ a Manufacturer's Certificate of Origin for Tesla 8393, thereby allowing the vehicle to be titled or re-sold.

13. On or about October 31, 2018, GONZALEZ sent an email to Tesla confirming that he had taken delivery of Tesla 8393.

14. On or about November 6 and 14, 2018, TD Bank rejected GONZALEZ's attempts to transfer $55,700 from his TD Bank account for insufficient funds because between late October and November 7, 2018 (the dates of the ACH transfers), GONZALEZ's account balance ranged from approximately $1,400 to $9,400.

15. On or about December 5, 2018, Tesla 8393 traveled into the states of Connecticut and Massachusetts.

16. On or about December 31, 2018, GONZALEZ delivered Tesla 8393 to a used car dealership in Williston, Vermont, where GONZALEZ sold Tesla 8393 to the dealership for approximately $42,500. GONZALEZ provided the used car dealership with a Manufacturer's Certificate of Origin for Tesla 8393.

3

17. GONZALEZ never paid Tesla the approximately $55,700 balance owed for Tesla 8393.

18. Between on or about December 30 and 31, 2018, in the District of Vermont and elsewhere, defendant MICHAEL A. GONZALEZ possessed and sold a stolen motor vehicle, that is – a 2018 Tesla Model 3 assigned Vehicle Identification Number 5YJ3E1EA3JF078393, said vehicle having crossed a State boundary after being stolen, that is said vehicle was stolen on or about October 31, 2018, and ultimately was brought into the State of Vermont, knowing said vehicle to have been stolen.

(18 U.S.C. § 2313)

## Count 2

### (*Tesla VIN 5626*)

19. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 6 of this Indictment as if fully set forth here.

20. On or about December 31, 2018, GONZALEZ reserved a 2018 Tesla Model X, ultimately agreeing to buy the Tesla vehicle assigned VIN 5YJXCAE4XJF135626 ("Tesla 5626") for approximately $144,200.

21. In connection with the order, GONZALEZ provided Tesla with an address in Burlington, Vermont and with a copy of his Vermont driver's license.

22. On or about December 31, 2018, GONZALEZ paid $2,500 as a down payment for Tesla 5626 using the bank account of a third-party.

    a. Specifically, GONZALEZ paid Tesla from a Key Bank account ending in 3618 held by an individual with the initials K.C. (who was the mother of GONZALEZ's child).

    b. After paying the down payment, GONZALEZ owed Tesla approximately $141,700 for Tesla 5626.

23. To pay the remaining balance on Tesla 5626, on December 31, 2018, GONZALEZ initiated ACH transfers of $141,700 to Tesla from four different bank accounts. At the time of the transfers, GONZALEZ knew the accounts had insufficient funds to pay for Tesla 5626.

24. Believing that GONZALEZ had paid for Tesla 5626 in full:

    a. Tesla caused Tesla 5626 to be delivered from Dedham, Massachusetts to GONZALEZ in Burlington, Vermont; and

5

      b. Tesla issued GONZALEZ a Manufacturer's Certificate of Origin for Tesla 5626, allowing the vehicle to be titled or re-sold.

On December 31, 2018, GONZALEZ signed a Delivery Declaration confirming that he had taken delivery of Tesla 5626.

25. In early January 2019, all four banks declined GONZALEZ's attempts to transfer $141,700 to Tesla.  In particular:

      a. Fidelity Investment rejected for insufficient funds GONZALEZ's attempt to transfer $141,700 to Tesla from account ending in 7999, because GONZALEZ's account balance was approximately $31,500;

      b. Fidelity Investment also rejected for insufficient funds GONZALEZ's attempt to transfer $141,700 to Tesla from account ending in 4545, because GONZALEZ's account balance was zero;

      c. New England Federal Credit Union rejected for insufficient funds GONZALEZ's attempt to transfer $141,700 to Tesla, because the account ending in 1003 (an account held by GONZALEZ's family member) had a balance of approximately $110; and

      d. TD Bank rejected GONZALEZ's attempt to transfer $141,700 to Tesla, because of a stop payment request, at the time GONZALEZ's balance in account ending in 7330 was approximately $1,350.

26. In January 2019, Tesla 5626 traveled into the States of New Hampshire, Massachusetts, and Connecticut.

27. On or about January 21, 2019, GONZALEZ charged Tesla 5626 at a Tesla Supercharger Station near a store in Berlin, Vermont. After charging Tesla 5626,

surveillance cameras from the store captured GONZALEZ stealing a $1,200 rocking chair and placing the chair into Tesla 5626.

28. The next day, on or about January 22, 2019, GONZALEZ listed Tesla 5626 for sale on craigslist.com for $108,000, stating in part: "mint condition … highest end Tesla model. 2,000 miles … Was $149,000 new. Mike."

29. Based on that craigslist.com posting, on or about February 5, 2019, GONZALEZ delivered Tesla 5626 to South Burlington, Vermont.

   a. In South Burlington, GONZALEZ sold Tesla 5626 for approximately $90,000 ($60,000 in cash and a $30,000 check) to an individual with the initials J.E.

   b. GONZALEZ provided J.E. with a Manufacturer's Certificate of Origin for Tesla 5626.

   c. The $90,000 sale price was approximately $54,200 less than GONZALEZ had agreed to pay for Tesla 5626 five weeks earlier.

   d. On or about February 26, 2019, GONZALEZ deposited the $30,000 check into his Fidelity Investment account ending in 7999.

30. GONZALEZ never paid Tesla the approximately $141,700 balance owed for Tesla 5626.

31. Between on or about January 21 and February 5, 2019, in the District of Vermont and elsewhere, defendant MICHAEL A. GONZALEZ possessed, concealed, stored, and sold a stolen motor vehicle, that is – a 2018 Tesla Model X assigned VIN 5YJXCAE4XJF135626, said vehicle having crossed a State boundary after being stolen, that is said vehicle was stolen on or about December 31, 2018, and

ultimately was brought into the State of Vermont, knowing said vehicle to have been stolen.

(18 U.S.C. § 2313)

## Count 3

*(Tesla VIN 0931)*

32. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 6 of this Indictment as if fully set forth here.

33. On or about January 24, 2019, GONZALEZ reserved a 2018 Tesla Model X, ultimately agreeing to buy the Tesla vehicle assigned VIN 5YJXCDE45JF140931 ("Tesla 0931") for approximately $152,663.93.

34. In connection with the order, GONZALEZ provided Tesla with an address in Dunnellon, Florida and with a copy of a Florida driver's license.

35. On or about January 24, 2019, GONZALEZ used his PayPal account ending in 1611 to pay $2,500 as a down payment for Tesla 0931. After paying the down payment, GONZALEZ owed Tesla approximately $150,163.93 for Tesla 0931.

36. To pay the remaining balance on Tesla 0931, on or about January 26 and February 1, 9, and 18, 2019, GONZALEZ initiated ACH transfers of $150,163.93 to Tesla from GONZALEZ's TD Bank account ending in 7330. At the time of the transfers, Gonzalez knew that the account had insufficient funds to pay for Tesla 0931.

37. Believing that GONZALEZ had paid for Tesla 0931 in full, on or about on January 26, 2019, GONZALEZ collected Tesla 0931 from the Tesla Store in Tampa, Florida and signed a Delivery Declaration acknowledging possession of Tesla 0931.

38. On or about February 1, 7, 15, and 23, 2019, TD Bank rejected GONZALEZ's attempts to transfer $150,163.93 from his TD Bank account because between January 26 and February 18, 2019 (the dates of the attempted ACH transfers),

GONZALEZ's TD Bank account ending in 7330 had a balance of approximately $1,350.

39. Tesla never provided GONZALEZ with a Manufacturer's Certificate of Origin for Tesla 0931. As a result, GONZALEZ could not register, title, or re-sell Tesla 0931.

40. On February 24, 2019, GONZALEZ drove Tesla 0931 onto a frozen portion of Shelburne Bay in Shelburne, Vermont.

- a.  GONZALEZ claimed that he drove Tesla 0931 onto the bay to go night ice fishing when Tesla 0931 began to hiss and then caught fire.

- b. On February 24, 2019, GONZALEZ did not possess a Vermont Sporting License to fish (GONZALEZ obtained a license approximately a week later).

- c. Shelburne Fire Department responded to Shelburne Bay, where Tesla 0931 was engulfed in flames and suffered total damage from being burned.

41. On February 24, 2019, GONZALEZ submitted a claim for damage to the Government Employees Insurance Company ("GEICO").

- a. Based on the unusual circumstances of the damage to Tesla 0931, GEICO required that GONZALEZ sit for an "Examination under Oath" and required GONZALEZ to bring (among other documents) copies of the "registration" and "title/certificate of ownership" for Tesla 0931.

- b. The Examination under Oath was scheduled for June 7, 2019, but GONZALEZ failed to appear.

- c. A second Examination under Oath was scheduled for July 19, 2019, but GONZALEZ also failed to appear for that examination.

    d.  On December 2, 2019, GEICO denied GONZALEZ's claims for damage related to Tesla 0931 because of GONZALEZ's failure to cooperate.

42. GONZALEZ never paid Tesla the approximately $150,163.93 balance for Tesla 0931.

43. On or about February 24, 2019, in the District of Vermont and elsewhere, defendant MICHAEL A. GONZALEZ possessed, concealed, and disposed of a stolen motor vehicle, that is – a 2018 Tesla Model X assigned VIN 5YJXCDE45JF140931, said vehicle having crossed a State boundary after being stolen, in that said vehicle was stolen on or about January 26, 2019, in Tampa, Florida and subsequently brought into the State of Vermont, knowing said vehicle to have been stolen, in violation of Title 18, United States Code, Section 2313.

(18 U.S.C. § 2313)

## Count 4

### (*Tesla VIN 1997*)

44. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 6 of this Indictment as if fully set forth here.

45. On or about March 21, 2019, Gonzalez reserved a 2019 Tesla Model X, ultimately agreeing to buy the Tesla vehicle assigned VIN 5YJXCBE45KF151997 ("Tesla 1997") for approximately $136,710.

46. GONZALEZ ordered Tesla 1997 in the name K.C. (the mother of his child) and provided Tesla with an address in Underhill, Vermont and with a copy of K.C.'s driver's license.

47. On or about March 21, 2019, GONZALEZ paid $2,500 as a down payment for Tesla 1997 from K.C.'s Key Bank account ending in 3618. After paying the down payment, GONZALEZ owed Tesla approximately $134,210 for Tesla 1997.

48. To pay the remaining balance on Tesla 1997, on or about March 22, 2019, GONZALEZ initiated an ACH transfer to Tesla for more than $134,000 from a TD Bank account that purportedly ended in 7390. At the time of the transfer, GONZALEZ knew that he did not have an account ending in 7390.

49. Believing that GONZALEZ had paid for Tesla 1997 in full:

   a. On or about March 23, 2019, GONZALEZ and K.C. collected Tesla 1997 from the Tesla Store in Manhasset, New York; and

   b. Tesla issued K.C. a Manufacturer's Certificate of Origin for Tesla 1997, thereby allowing the vehicle to be titled or re-sold.

50. On or about March 25, 2019, TD Bank rejected GONZALEZ's attempt to transfer more than $134,000 to Tesla because the TD Bank account number GONZALEZ provided to Tesla did not exist.

51. In April 2019, GONZALEZ transferred the title and ownership of Tesla 1997 into his own name.

 a. On April 23, 2019, GONZALEZ presented the Manufacturer's Certificate of Origin and a Registration Tax and Title Application to the Vermont Department of Motor Vehicles claiming that GONZALEZ purchased Tesla 1997 from K.C. by executing an "even trade" with her for a 2013 Kia Optima.

 b. Based on the documentation, the Vermont Department of Motor Vehicles registered and titled Tesla 1997 in GONZALEZ's name.

 c. According to the National Automobile Dealers Association, in spring 2019, a 2013 Kia Optima had a retail value of approximately $8,200, while Tesla 1997 had a purchase price of approximately $136,710.

52. In or about May 2019, GONZALEZ listed Tesla 1997 for sale on eBay.

 a. On or about May 18, 2019, GONZALEZ sold Tesla 1997 for approximately $99,400 to an eBay buyer.

 b. On or about May 18, 2019, the eBay buyer transferred $2,000 as a down payment to GONZALEZ's PayPal account.

 c. On June 15, 2019, GONZALEZ physically delivered Tesla 1997 to the eBay buyer's friend at Burlington International Airport in Burlington, Vermont.

    d.  To complete the sale, the eBay buyer's friend gave GONZALEZ two checks totaling approximately $97,400.

    e.  GONZALEZ subsequently deposited the two checks into two separate bank accounts held in his name.

53. GONZALEZ never paid Tesla the approximately $134,210 balance for Tesla 1997.

54. On or about June 15, 2019, in the District of Vermont and elsewhere, defendant MICHAEL A. GONZALEZ received, possessed, sold, and disposed of a stolen motor vehicle, that is – a 2019 Tesla Model X assigned VIN 5YJXCBE45KF151997, said vehicle having crossed a State boundary after being stolen, that is said vehicle was stolen on or about March 23, 2019, in Manhasset, New York and subsequently brought into the State of Vermont, knowing said vehicle to have been stolen, in violation of Title 18, United States Code, Section 2313.

(18 U.S.C. § 2313)

## Count 5

### (*Tesla VIN 1783*)

55. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 1 to 6 of this Indictment as if fully set forth here.

56. On or about July 20, 2019, GONZALEZ reserved a 2019 Tesla Model X, ultimately agreeing to purchase the Tesla vehicle assigned VIN 5YJXCAE41KF181783 ("Tesla 1783") for approximately $115,200.

57. GONZALEZ ordered the Tesla vehicle in the name of an individual with the initials A.C. (a former girlfriend) and provided Tesla with an address in Saint Albans, Vermont and a copy of A.C.'s driver's license.

58. On or about July 20, 2019, GONZALEZ transferred via CashApp and PayPal approximately $2,565 into a bank account held by A.C.

   a. Using A.C.'s bank account, also on July 20, 2019, GONZALEZ and A.C. paid Tesla $2,500 as a down payment for Tesla 1783.

   b. After paying the down payment, GONZALEZ owed Tesla approximately $112,700 for Tesla 1783.

59. To pay the remaining balance on Tesla 1783, on or about July 20, 2019, GONZALEZ initiated an ACH transfer to Tesla for more than $112,000 from a TD Bank account that purportedly ended in 5449. At the time of the transfer, GONZALEZ knew that he did not have an account ending in 5449.

60. Believing that GONZALEZ had paid for Tesla 1783 in full:

   a. On or about July 24, 2019, GONZALEZ and A.C. collected Tesla 1783 from the Tesla Store in Mount Kisco, New York; and

      b.  Tesla issued A.C. a Manufacturer's Certificate of Origin for Tesla 1783, thereby allowing the vehicle to be titled or re-sold.

61. On or about July 23, 2019, TD Bank rejected GONZALEZ's attempt to transfer more than $112,000 from account ending in 5449 because that account did not exist.

62.  On or about August 21, 2019, GONZALEZ submitted a "Registration Tax & Title Application" to the Vermont Department of Motor Vehicles in an attempt to register and title Tesla 1783 in his own name. On the application, GONZALEZ falsely claimed that he purchased Tesla 1783 from A.C. for $80,000, when in fact GONZALEZ did not pay A.C. any money for Tesla 1783.

63. Based on GONZALEZ's failure to pay for Tesla 1783, Tesla retained a company to repossess Tesla 1783.

      a.  In August 2019, a vehicle repossession company in Jonesville, Vermont received instructions to repossess Tesla 1783.

      b.  On or about September 3, 2019, the vehicle repossession company located GONZALEZ and Tesla 1783 in a parking garage in Burlington, Vermont.

      c.  After being advised that Tesla 1783 was to be repossessed, GONZALEZ entered Tesla 1783 and fled the parking garage almost striking a member of the vehicle repossession company.

64.  To make it seem as though GONZALEZ had paid for Tesla 1783, on or about September 4, 2019, GONZALEZ initiated another ACH transfer for approximately $112,700, from a TD Bank account ending in 7330. On or about September 5, 2019, TD Bank rejected GONZALEZ's ACH transfer based on a stop payment request. At

16

the time of the transfer, GONZALEZ's balance in account ending in 7330 was approximately $1,150.

65. On or about September 4, 2019, Gonzalez rented a storage unit from a facility in Wolcott, Vermont. GONZALEZ rented a unit large enough to store Tesla 1783.

66. On February 19, 2020, GONZALEZ was arrested and incarcerated on an unrelated criminal charge.

    a. On February 26, 2020, during a recorded jailhouse call, GONZALEZ told A.C. that he still had "that Tesla," which he had "to sell" after he was released.

    b. On January 8, 2021, GONZALEZ was released from custody.

67. After being released from custody, GONZALEZ attempted to sell Tesla 1783. In that regard, on January 17, 2021:

    a. GONZALEZ sent via Instagram photographs of Tesla 1783 to an individual in Seabrook, New Hampshire and offered to sell the individual Tesla 1783 "for cheap."

    b. GONZALEZ called the American Automobile Association stating in relevant part that his white 2019 Tesla Model X (the same color, year, make, and model as Tesla 1783) was in a storage unit in Wolcott, Vermont and that he needed the vehicle towed to Seabrook, New Hampshire.

    c. A towing company met GONZALEZ at the storage facility in Wolcott, Vermont, where it loaded Tesla 1783 from GONZALEZ's storage unit onto a flatbed truck.

d. The towing company then transported Tesla 1783 to Seabrook, New Hampshire.

e. The Seabrook (New Hampshire) Police Department took custody of Tesla 1783 as a stolen vehicle.

68. GONZALEZ never paid Tesla the approximately $112,700 balance for Tesla 1783.

69. On or about January 17, 2021, in the District of Vermont and elsewhere, defendant MICHAEL A. GONZALEZ possessed, concealed, stored, and disposed of a stolen motor vehicle, that is – 2019 Tesla Model X, assigned VIN 5YJXCAE41KF181783, said vehicle having crossed a State boundary after being stolen, that is said vehicle was stolen on or about July 24, 2019, in Mount Kisco, New York and subsequently brought into the State of Vermont, knowing said vehicle to have been stolen, in violation of Title 18, United States Code, Section 2313.

(18 U.S.C. § 2313)

## Forfeiture Notice

70.  The allegations contained in Counts 1 to 5 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

71. Upon conviction for one or more of the offenses alleged in Counts 1 through 5 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of said violations.

72. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    a.  Cannot be located upon the exercise of due diligence;

    b.  Has been transferred or sold to, or deposited with, a third person;

    c.  Has been placed beyond the jurisdiction of the Court;

    d.  Has been substantially diminished in value; or

    e.  Has been commingled with other property that cannot be subdivided without difficulty;

the United States intends, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p), and Title 28, United States Code,

Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

A TRUE BILL

**REDACTED**

FOREPERSON

JONATHAN A. OPHARDT (JWD)
Acting United States Attorney
Burlington, Vermont
August 26, 2021

20